The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Cramer. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
The parties entered pre-trial stipulations which are incorporated by reference as if fully set out herein.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. The Industrial Commission has jurisdiction to hear this claim, all parties being properly before the Commission.
2. Plaintiff was 44 years old on the date of hearing, has a high school education and has been working for the defendant-employer since September 1972.
3. Plaintiff worked in the area of the bank responsible for foreclosures, and her regular office hours were 8:30 a.m. to 5 p.m.
4. Since she began working for defendant, plaintiff participated on a softball team that was partly sponsored by defendant-employer Nationsbank and their predecessor NCNB. The team played in the league of the City of Raleigh and played in city parks.
5. The only financial support given by Nationsbank was to pay the yearly registration fee which was about $250 to $300. In 1993, all other expenses were covered by the softball players themselves. The players purchased their own softball gloves and their own T-shirts through the Nationsbank store for $5 each. The T-shirts worn with the players own shorts were the players uniforms. The T-shirts had the name "Nationsbank" on them.
6. In 1993, one of the bank employees involved with the team moved to Charlotte and took the softball equipment such as bats and balls with him. Another employee, Mary Sharpe, gave the team some bats and used softballs that were her husband's. She donated these items to the team and neither the bank nor the team members compensated her for this equipment.
7. The Nationsbank team was not restricted to Nationsbank employees. As of July 15, 1993, there were sixteen players listed on the team roster, fourteen of whom were employees and two of whom were not.
8. Bank employees were not required, expected, or encouraged by management to participate on the softball team. The employees who participated did it on a voluntary basis, because they enjoyed the sport. Whether or not an employee played on the softball team was not considered in employee evaluations or promotions.
9. The softball team was only one of many civic activities that the bank in part sponsored, such as charitable events which may involve employees or their families, such as walk-a-thons.
10. In 1993, the softball games were played in the evening, at 6:30, 7:30 and 8:30, which was after the plaintiff's working hours. Bank employees, including plaintiff, were not given time off from work to play softball and were not compensated for the time they spent playing softball. There was no attendance record kept by the employer.
11. There was no evidence that the softball team was an employee benefit to which employees were entitled as a matter of right.
12. In earlier years, the bank had sponsored banquets and given awards at the end of the softball season. However, this practice had stopped in the 1980's, several years before plaintiff's injury occurred. In 1993, there were no such awards banquets. The players would get together at each others homes, on a non-work day, such as Saturday. The bank did not pay any expenses associated with these team gatherings.
13. Nationsbank received some intangible benefits from the participation of employees on the softball team. Plaintiff and her co-workers did discuss work matters when they got together to practice or play ball. This may have contributed in a positive way to employee morale and good will. Nationsbank may have also received some immeasurable publicity benefits from having a team with the name "Nationsbank" participate in the city league. Otherwise, there was no direct benefit to Nationsbank from the softball games. In 1993 there were no formal banquets where speeches were made or awards given.
14. On August 23, 1993, plaintiff was injured while playing softball on the Nationsbank team. She was covering second base when another player ran into her, causing a comminuted fracture of her right leg at the tibia/fibula.
15. As a result of her injury, plaintiff was out of work from August 23, 1993 through January 4, 1994. During this time she received her full salary through a short term disability plan. Her medical bills were covered by insurance and she had a twenty percent co-payment.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Under the criteria recognized by our appellate courts, the injury sustained by plaintiff on August 23, 1993, while playing softball did not arise out of and in the course of her employment with the defendant-employer Nationsbank. The employer only partially defrayed the expenses of the softball team, participation was voluntary, and games were not played during working hours, nor were employees compensated for time playing softball, playing on the team was not a benefit of employment, and there was no direct benefit to the employer.Martin v. Mars Mfg. Co., 58 N.C. App. 577 (1982); Chilton v.School of Medicine, 45 N.C. App. 13 (1980).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Under the law, plaintiff's claim must be, and the same is, hereby DENIED.
2. Each side shall pay its own costs.
 S/ _____________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _______________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _______________________ THOMAS J. BOLCH COMMISSIONER